McKinney, J.,
delivered the opinion of the Court.
This was an action of trespass. The freehold or right of sale was put in issue. Verdict and judgment against the plaintiff, and an appeal in error.
Both parties derive title from the same source — a grant for fifty acres, to Thomas Loyd, issued 29th May, 1823.
*137 There is an admitted error in the calls of the grant. The third corner of the grant is a white oak, and on the face of the grant, the call is from that white oak, “South 149 poles to the beginning," which is a post oak ; thus dividing the tract, which is in the form of a parallelogram, into two parts, by a diagonal line.
The entry of fifty acres was actually surveyed, and the boundaries marked, preparatory to the issuance of the grant.
From the white oak, at the third corner, the true boundary is to a black oak, marked as the fourth corner, and thence to the post oak, the beginning corner.
Yates, the defendant, claims title to the entire tract of fifty acres, under a purchase made by him at public auction, of that and other lands, of Thomas Loyd, the grantor, and sold by Robert Loyd, his executor, under a power in the Will, on the 26th of May, 1858, and a deed from the executor, in pursuance of the sale, executed to him on the 2d of September, 1858, which deed substantially pursues the calls of the grant, and contains the same erroneous call, from the white oak directly to the post oak.
This call, for some reason not explained, is twice repeated in discribing the boundaries, and by the last call this line purports to run “with the closing line of said fifty acre tract.”
On the 19th of March, 1859, Loyd, the executor, upon the assumption that the sale to Yates was only to the line before mentioned, that is, from the post oak to the white oak — sold and conveyed — by a quit claim deed, so much of said fifty acre tract as was contained in the tri *138 angle on the opposite side of said line, to the plaintiff, Dyer.
For a supposed trespass, by cutting timber within the limits of Dyer’s conveyance, this suit was brought.
Before executing the deed to Yates, Loyd procured a surveyor to run the line from the post oak to the white oak. The surveryor was positively directed by Loyd to run a straight line from the one point to the other, insisting that Yates had purchased no further, and that that was the proper boundary of the conveyance to be made to him. Yates was present at the running of the line, or at least, part of the time, and denied that a line from the post oak to the white oak was the boundary, and insisted that he had purchased the whole fifty acre tract. The proof is clear, that the surveyor merely traced a line by the compass, from the post oak to the white oak, without having marked any trees, or erected any monuments of boundary, or changed, in any respect, the original boundaries of the fifty acre tract, or done anything more than merely run an imaginary line from one point to the other.
The record presents two inquiries for our consideration. The first is purely a question of fact: What land was actually sold and purchased, according to the mutual agreement and understanding of the parties at the time of the contract.
On this point, there is a direct conflict in the proof. On the one side, it is proved by several witnesses, that the executor publicly announced, at the time of the sale, that there was a dispute as to the boundary of the fifty acre tract, and that he would only sell to the line from the post oak to the white oak.
*139 This proof is directly and positively contradicted, by a greater number of witnesses, on the other 'side, who state expressly, that the executor proclaimed publicly that he was selling all the land belonging to the testator at his death, and that the disputed line, spoken of by the executor, was the “ big survey line,” and had no reference to the fifty acre tract whatever. This is the effect of the proof. And in view of all the facts, it seems to us that the jury were justified in the conclusion, that the entire tract was sold to Yates. No reason is assigned, and we can imagine none, why the executor should have refused to sell the land on the day of the public sale, for the reason that there was a dispute as to the boundary, and yet in so short a time afterwards, have made the sale to Dyer.
There really never was any dispute as to the correct boundaries of the fifty acre tract. The lines had been all plainly marked at the time of the original survey, and this fact was well known to the executor, at the time of the sale to Yates. The error in the grant was not material, though its calls literally pursued did not take in all the land covered by the entry, and appropriated by an actual survey, and marking of the lines and corners; yet, in legal contemplation, it did cover all the land, and vest the grantor with a legal title to the same, as fully as if the calls had exactly conformed to the entry and survey ; because upon the facts stated, the law corrected the erroneous call, and supplied the proper calls, without any correction in point of fact.
The next question is, were the boundaries of the *140 grant altered, or in any way affected, by the so-called survey, made, at the instance of the executor, 'preceding the execution of the conveyance to Yates.
There is no doubt but that it was the intention of the executor, by the pretended survey, and the deed made in pursuance thereof, to limit Yates to the line from the post oak to the white oak. This is sufficiently apparent. But, if, as the jury have established, the entire tract was sold to Yates, it is very clear that the intention of the executor, or his ex parte acts, could not have the effect of thus restricting Yates’ purchase, unless, in point both of law and fact, a new boundary had been fixed by the conveyance, different from the boundary of the grant. This, if the conveyance had been accepted by Yates, might, perhaps, have bound him.
But, was any such new boundary fixed by the deed ? We think not. There is no magic in the mere fact of the surveyor’s having traversed the distance from one corner to another, by the direction of his compass, without leaving a single trace upon the ground. This was neither the re-marking of a supposed previously existing line, nor the actual establishment of a new and different line from that called for in the grant.
The act was simply nugatory. The lines and boundaries of the grant were left intact. And whatever may have been the purpose or intention of Loyd, the calls of the deed wore made to conform to the calls of the grant, and, of course, whatever the law adjudges to be the boundaries of the grant, must also be the boundaries of the deed.
*141 We do not mean to say that a boundary line may not be established by simply marking a tree at each terminus of the line, without any intermediate marks, for we have held that this may be done; and that a new boundary may be thus established, which will control a pre-existing boundary, if assented to and acted upon, mutually, by the parties. But here no new corners were made; and it is manifest, that Yates, so far from assenting to anything that was done by Loyd, with the view of altering the boundary, wholly dissented from it, and cannot, therefore, be held concluded.
We hold, consequently, that the conveyance to Yates, as- well as the grant, covers the entire tract of fifty acres, and that Dyer has no title to any part of the same.
Judgment affirmed.